JS-6

NOTE: CHANGES HAVE BEEN
MADE TO THIS DOCUMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation, | Case No.: 2:21-cv-08980 |
| Plaintiff, | |
| v. | CONSENT DECREE AND FINAL JUDGMENT |
| SENIOR OPERATIONS LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

1
CONSENT DECREE AND FINAL JUDGMENT

## CONSENT DECREE

**WHEREAS,** Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Senior Aerospace SSP, a division of Senior Operations LLC ("Senior Aerospace" or "Defendant") owns and operates an industrial facility located at 2980 N. San Fernando Blvd., Burbank, CA 91504 ("Facility).

**WHEREAS**, the industrial activities at the Facility consist primarily of the manufacture of air ducting systems, precision sheet metal fabrications, and other fabricated metal parts for the aerospace industry. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3728 - covering the manufacturer of aircraft parts and auxiliary equipment.

**WHEREAS**, stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("General Permit" or "Permit" or "Industrial General Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and

implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

WHEREAS, on April 7, 2021, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Water Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit, Water Quality Order 2014-0057-DWQ, and as amended by Water Quality Order No. 2015-0122-DWQ, at the Facility;

WHEREAS, on November 16, 2021, Waterkeeper filed a complaint against Senior Aerospace in the Central District of California, Civil Case No. 2:21-cv-08980 ("Complaint");

WHEREAS, Plaintiff's complaint alleged violations of the General Permit and CWA for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River, Queensway Bay, and Junipero Beach, and ultimately the Pacific Ocean ("Receiving Waters");

WHEREAS, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree

setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      Waterkeeper has standing to bring this action; and

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the two (2) year term of this Consent Decree or thereafter as needed to interpret, modify, or enforce paragraph 20.a.i.(a).

**I.     OBJECTIVES**

6.      It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with

all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.     AGENCY REVIEW AND CONSENT DECREE TERM

### A.     Agency Review of Consent Decree

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.     <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10.     <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.     Effective Date and Term of Consent Decree

11.     <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court.

12.     <u>Term & Termination</u>. Subject to the Court retaining jurisdiction over this Consent Decree to the extent specified in paragraph 5, this Consent Decree shall terminate two (2) years from the Effective Date unless one of the Settling

Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Storm Water Pollution Control Best Management Practices

13.   <u>Current and Additional Best Management Practices</u>. In addition to maintaining the current Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution Plan ("SWPPP"), Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT"). In addition, the Industrial General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs necessary to comply with the Industrial General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14.   <u>Structural and Non-Structural BMPs for the Facility</u>. Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

a.  Senior Aerospace shall replace the metal absorbing filter media in the storm water catch basins prior to each wet season (October 1st though April 15th), and properly maintain the filter media during each wet season replacing the media as required to maintain adequate performance;

b.  Senior Aerospace shall continue quarterly cleanings of all outdoor aisles and racks;

c.  During the wet season, Senior Operations shall conduct twice-weekly sweeping of all impervious surfaces with its Advance SW8000 Rider Sweeper or an alternate street sweeper certified per the South Coast Air Quality Management District Rule 1186 procedures, and perform hand sweeping or equivalent cleaning techniques in areas inaccessible to the street sweeper, as needed;

d.  Senior Aerospace shall institute a formal pre-rain protocol involving inspection of filters, verifying trash receptacles are closed, rack curtains are closed, inspection of parking areas for vehicle leaks, and ensuring temporary coverage of tool carts that may remain exposed to storm water;

e.  Senior Aerospace shall construct overhead structures for the hazardous materials storage area and the separate tool storage area that meet the standards of "Storm-Resistant Shelters" as defined in the General Permit;

f.  Senior Aerospace shall extend the roof drainage lines from the Fabrication building to discharge directly to the parking area;

g.  Senior Aerospace shall perform maintenance activities indoors or under cover (for maintenance activities that must be performed outdoors, the activity must be performed upon absorbent ground

cover and care any discharge or spill of waste fluids shall be immediately contained, captured and cleaned up);

h.   Senior Aerospace shall maintain spill clean-up supplies at the following outdoor areas: hazardous material storage area, the employee break area, all fluid storage, hydraulic press, and maintenance areas, and outside building 600; and

i.   Senior Aerospace shall inspect outdoor, uncovered  work areas daily to ensure adequate implementation and maintenance of operational procedures and control measures.

### B.   Sampling at the Facility

15.   Senior Aerospace shall develop a monitoring program consistent with the Industrial General Permit. During the life of this Consent Decree, Defendant shall collect samples of storm water discharge from all three of the Facility's sampling points under its Stormwater Pollution Prevention Plan ("SWPPP"), which are collectively referred to herein as the "Discharge Locations." Defendant shall collect storm water samples from each Discharge Location from at least four (4) Qualifying Storm Events (i.e., two Qualifying Storm Events during the first half of the Reporting Year[1] and two Qualifying Storm Events during the second half of the Reporting Year). A Qualifying Storm Event is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, due to lack of Qualifying Storm Events, fewer than two Qualifying Storm Events are collected in the first half of a Reporting Year, that shall be compensated by collecting an additional sample from an additional Qualifying Storm Event during the second half of a Reporting Year, until a total of four samples are collected for any Reporting Year occurring during the term of this Agreement. The analytical results from the

---

[1] The Reporting Year is defined as July 1 through June 30.

samples collected during the four (4) Qualifying Storm Events required by this Agreement each Reporting Year shall be used to demonstrate compliance with this Agreement. Any failure to collect samples as required by this Consent Decree shall be documented and submitted to Waterkeeper by email within ten (10) business days of the date a sample should have been collected but was not.

16.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1.

17.    <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions or otherwise in accordance with the Industrial General Permit.

18.    <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Industrial General Permit and Table 1 below.

19.    <u>Reporting</u>. Within fifteen (15) days of receiving the results, Defendant shall provide notice to Waterkeeper via email, sent to the address listed in paragraph 55, when complete laboratory results of samples collected at the Facility are uploaded to the State Board's Stormwater Multiple Application and Report Tracking System ("SMARTS").

**C.    Reduction of Pollutants in Discharges**

20.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.  As of the Effective Date, and for the remainder of the term of this Consent Decree, if storm water samples demonstrate an exceedance of a numeric

limit in Table 1 in a single Reporting Year, Defendant shall comply with the action plan requirement set forth below.

TABLE 1

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L | Instantaneous NAL |
| | 100 mg/L | Annual NAL |
| Lead | 0.094 mg/L | Numeric Effluent Limit |
| Oil & Grease (O&G) | 25 mg/L | Instantaneous NAL |
| | 15 mg/L | Annual NAL |
| Zinc | 0.159 mg/L | Numeric Effluent Limit |
| | 0.26 mg/L | Annual NAL |
| Copper | 0.06749 mg/L | Numeric Effluent Limit |
| | 0.0332 mg/L | Annual NAL |
| Iron | 1 mg/L | Annual NAL |
| Aluminum | 0.75 mg/L | Annual NAL |
| pH | 6-9 s.u. | EPA Benchmark |

21.  <u>Table 1 Exceedances</u>. Table 1 Exceedances are defined as follows: beginning with the 2021-2022 Reporting Year, in any Reporting Year under the term of this Consent Decree an Action Plan shall be required if 1) the annual average (Annual NAL) of all storm water analytical results for individual pollutant(s) exceeds any of the applicable benchmarks as set forth in Table 1; 2) any two storm water discharge samples contain a single pollutant at a concentration that exceeds an Instantaneous NAL as set forth in Table 2 of the Permit (i.e., for TSS, O&G and pH); or 3) any two storm water discharge samples contain a single pollutant at a concentration that exceeds a Numeric Effluent Limit as noted in Table 1 ("Exceedance"). In any Reporting Year during which Defendant receives a final laboratory report(s) of sampling completed under paragraph 6 of this Agreement that demonstrates an Exceedance of Table 1, as defined above, Defendant shall prepare and submit to Waterkeeper a plan for reducing and/or eliminating the discharge of pollutants for the Facility ("Action

Plan"). Each Action Plan shall be submitted to the Waterkeeper no later than thirty (30) days after the Facility receives the laboratory report(s) for the fourth, or final if there is not a fourth due to lack of Qualifying Storm Events, storm water sample in the Reporting Year, which shall be the last sample taken on or before June 30 of the Reporting Year. In no event shall more than one Action Plan be required per Reporting Year. Each Action Plan must address each Exceedance of a Table 1 analyte separately.

      a.  <u>Action Plan Requirements</u>. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that will  be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs, as applicable; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Except for the BMPs specified in paragraph 20.a.i., if BMPs are identified in the Action Plan that cannot reasonably be completed by October 1 of the upcoming Reporting Year, then Defendant shall inform Waterkeeper of any implementation delays and the reasons for the delays and provide a general timeline to implement such BMPs. Defendant shall notify Waterkeeper in writing when an Action Plan has been implemented.

         i.  Any Action Plan required under this Consent Decree following the 2022-2023 Reporting Year, shall require, at a minimum, either of the following BMPs, which shall be

installed and begin operating by June 30 of the upcoming Reporting Year (i.e., within twelve months of the prior Reporting Year) unless the Waterkeeper extends the deadline upon Defendant's demonstration to Waterkeeper's reasonable satisfaction that the selected BMP cannot reasonably be completed by the deadline:

(a)  Capture and treatment of storm water, consistent with the Flow-Based BMP standards from the Permit (Permit Section X.H.6.b); or

(b)  Capture and treatment of storm water by installing and operating the two treatment systems at the Facility, one for the Facility's North drainage area and the other for the Facility's South drainage area, that are the subject of the proposal dated October 22, 2021 that Defendant obtained from Gullywasher© Stormwater Filters, a copy of which Waterkeeper acknowledges it received and reviewed to its satisfaction, and which systems are hereby pre-approved for Defendant's use by Waterkeeper.

b.  <u>Action Plan Review</u>. Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of Waterkeeper's reasonably recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree

are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

    c. <u>Action Plan Payments</u>. Defendant shall pay Three Thousand Dollars ($3,000) each time an Action Plan is submitted to Waterkeeper under paragraph 21. Payments shall be made to "Los Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**D.**    **Visual Observations**

22.    <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct visual observations during the Facility's operating hours during every rain event that produces a discharge at one or more of the Discharge Locations.

23.    <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each Discharge Location.

24.    <u>Visual Observations Records</u>. Defendant shall maintain observation records to document compliance with paragraphs 22 and 23 and shall provide Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from Waterkeeper for those records.

25.    <u>Employee Training Program</u>. Within forty-five days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the Industrial General Permit and this Consent Decree ("Designated Employees"), and (2) that

these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

     a. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the Industrial General Permit.

     b. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the Industrial General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP.

     c. <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

     d. <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees.

     e. <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the Industrial General Permit's prohibition of non-storm water discharges, so that

Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges.

   f.   <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date.

   g.   The Defendant shall maintain training records to document compliance with this paragraph, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

   h.   <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>. Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

26.   <u>SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update</u>. Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree. Defendant agrees to submit the updated SWPPP and MIP to Waterkeeper upon completion for review and comment.

   a.   <u>Review of SWPPP and/or MIP</u>. Waterkeeper shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is no incorporated;

b.   Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to Waterkeeper's review and comment as provided in paragraph 30(a) above.

c.   The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

**E.   Compliance Monitoring and Reporting**

27.   Every year during the life of this Consent Decree, Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the Industrial General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Consent Decree at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Waterkeeper will provide Defendant with as much notice as possible—but at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours (Monday through Friday 7:00 AM to 12:00 AM at Facility 1, and Monday through Friday 7:00 AM to 4:30 PM at Facility 2) in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather.

Notice will be provided by telephone and email to the individual(s) designated below at paragraph 55. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to Waterkeeper.  Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

28. <u>Document Provision</u>. During the term of this Consent Decree, Defendant shall notify and submit documents to Waterkeeper as follows:

    a.   Defendant shall copy Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

    b.   Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to Waterkeeper within ten (10) business days of receipt by Defendant. Defendant shall mail paper copies or email copies of documents to Waterkeeper at the relevant notice address contained below.

29. <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree in the amount of Ten Thousand Dollars ($10,000.00) The payment shall be

made payable to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401, within  thirty (30) days of the Effective Date. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

**F.**     **Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest**

30.     <u>Environmental Mitigation Project</u>: To remediate the alleged environmental harms resulting from allegations in the Complaint, Defendant agrees to make a payment of Twenty Thousand Dollars ($20,000.00) to the Rose Foundation for environmental remediation projects designed to benefit the Los Angeles River and the Los Angeles River Watershed. The payments shall be made within thirty (30) days of the Effective Date payable to the Rose Foundation for Communities and the Environment. Defendant shall provide Waterkeeper with a copy of such payment.

31.     <u>Waterkeeper's Fees and Costs</u>. Defendant agrees to pay a total of Forty-Seven Thousand Five Hundred ($47,500.00) to Waterkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment in full shall be made within thirty (30) days of the Effective Date and delivered by certified mail or overnight delivery made payable to: Aqua Terra Aeris Law Group LLP and sent to ATA Law Group, 4030 Martin Luther King Jr. Way Oakland, CA 94609.

32.     <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed to Waterkeeper under this Consent Decree that Waterkeeper has not received by the due date.  The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of 1% per month

(12% per year). Interest on late payments shall be made payable to Waterkeeper and sent to the address listed in paragraph 55, below.

## IV.   Dispute Resolution

33.   This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

34.   Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution.  The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

35.   Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 34, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

36.   In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.   Mutual Release of Liability and Covenant Not to Sue

37.   Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf

and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

38.    Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

39.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Termination Date of this Consent Decree.

40.    Waiver of California Civil Code § 1542.  Upon the Effective Date, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542.  The parties acknowledge they are familiar with section 1542 of the California Civil Code, with provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR OR

RELEASED PARTY." While a Party may assert that California Civil Code section 1542 applies to general releases only, and that the releases herein are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims arising from, or related to, the allegations and claims as set forth in the 60-Day Notice, and/or the Complaint, up to and including the Termination Date of this Consent Decree.

## VI.   Miscellaneous Provisions

41.   <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

42.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

43.   <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

44.   <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and

paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

45.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

46.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

47.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

48.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

49.    <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

50.    <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

51.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

52.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

53.     <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

54.     <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; pandemic; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance.

The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

55.     Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the email address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:

Kelly Clark, Senior Attorney
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401.
kelly@lawaterkeeper.org


<u>With copies to</u>:

Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
amb@atalawgroup.com

<u>If to Defendant</u>:

Sameer Madan
Senior Aerospace SSP, a division of
Senior Operations LLC
2980 N. San Fernando Blvd.
Burbank, CA 91504
SMadan@seniorssp.com


<u>With copies to</u>:

Geoffrey Tichenor
Stoel Rives LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
geoffrey.tichenor@stoel.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

56.    If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**The Court hereby approves and enters this Consent Decree.**

**IT IS SO ORDERED.**

Dated: January 26, 2022

_____
Hon. Otis D. Wright II
United States District Judge


IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2021          By: _____
                                          Bruce Reznik
                                          Los Angeles Waterkeeper


Dated: _____, 2021          By: _____
                                          Sameer Madan
                                          Senior Aerospace SSP, a division
                                          of Senior Operations LLC

APPROVED AS TO FORM

Dated: _____, 2021          By: _____
                                              Anthony M. Barnes
                                              Attorney for Plaintiff
                                              Los Angeles Waterkeeper


Dated: _____, 2021          By: _____
                                              Michael N. Mills
                                              Attorney for Defendant
                                              Senior Aerospace SSP, a division
                                              of Senior Operations LLC

CONSENT DECREE AND FINAL JUDGMENT